# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE INTEL CORPORATION SHAREHOLDER DERIVATIVE LITIGATION** | CASE NO. 18-cv-01489-YGR<br><br>**ORDER GRANTING STATE PLAINTIFFS' MOTION TO INTERVENE**<br><br>Re: Dkt. No. 58 |

Now before the Court is a motion, filed by proposed intervenor Joseph Tola, on behalf of the plaintiffs in *In re Intel Corporation Shareholder Derivative Litigation*, Case No. 18-CIV-00170 (Hon. Richard H. DuBois) (the "State Action"), for an order allowing the plaintiffs in the State Action ("State Plaintiffs") to intervene in the above-captioned case (the "Federal Action") pursuant to Federal Rule of Civil Procedure 24 for the sole purpose of filing a limited opposition to defendants' and nominal defendant's (together, "Federal Defendants") request for dismissal with prejudice of this Federal Action, (*see generally* Dkt. Nos. 52, 56). (Dkt. No. 58 ("MTI").) The Court finds it appropriate to take the motion under submission without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).[1] For the reasons set forth below, the court **GRANTS** State Plaintiffs' Motion to Intervene.[2]

## I. BACKGROUND

Similar shareholder derivative actions were filed on behalf of Intel Corporation ("Intel") in federal and state court arising from certain security vulnerabilities affecting Intel chips. The first shareholder derivative complaint related to the State Action was filed on January 11, 2018,[3] and

---

[1] The hearing on the motion, currently set for November 6, 2018, is hereby **VACATED**.

[2] Because this Order decides State Plaintiffs' motion to intervene, their motion for an order shortening time to have that motion heard (Dkt. No. 57 ("MST")) is **DENIED AS MOOT**.

[3] The first state shareholder derivative action was subsequently consolidated with two

the first shareholder derivative complaint pertaining to the Federal Action was filed on March 8, 2018.[4] State Plaintiffs assert claims against certain officers and directors of Intel, for, *inter alia*, breach of fiduciary duty, insider trading, and violations of California Corporations Code section 25042. (*See generally* Exh. 1 to Declaration of Mark C. Molumphy ISO State Plaintiffs' MTI ("Molumphy MTI Decl."), Dkt. No. 58-2.) Plaintiffs in the Federal Action ("Federal Plaintiffs") assert claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment, also against certain of Intel's officers and directors. (*See generally* Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment ("Fed. Deriv. Compl."), Dkt. No. 1-1.)

On August 8, 2018, this Court granted, with leave to amend, a motion to dismiss the federal complaint for failure to plead demand futility. (Dkt. No. 44.) On August 24, 2018, the state court sustained a demurrer to the state complaint for failure to plead demand futility but granted State Plaintiffs leave to amend. (*See* Molumphy MTI Decl. Exh. 3, Dkt. No. 58-4.)

The parties in the State Action subsequently stipulated to a one-month extension for the filing of an amended complaint, noting that "Plaintiffs' counsel are currently in discussions with Intel's counsel regarding the scope of a shareholder books and records demand, and Plaintiffs desire to resolve such issues prior to filing an amended complaint." (*See* Molumphy MTI Decl. Exh. 4, Dkt. No. 58-5 at ECF p. 4.) The state court approved the stipulation, setting October 10, 2018 as the deadline for State Plaintiffs to file an amended complaint. (*Id*.) Meanwhile, Federal Plaintiffs filed a notice of voluntary dismissal of the Federal Action without prejudice on September 14, 2018, in lieu of an amended consolidated complaint. (Dkt. No. 50.)

On September 21, 2018, an Intel shareholder filed a petition for writ of mandate in the State Action, claiming that Intel had declined to provide an inspection of documents that had been requested pursuant to an inspection demand made by "State Plaintiffs, working with [the] other shareholder derivative actions in the state court.

---

[4] The first federal shareholder derivative action was subsequently consolidated with two other shareholder derivative actions in this court.

shareholder." (MTI at 6; *see also generally* Molumphy MTI Decl. Exh. 5.) In the meantime, Federal Defendants objected to the notice of voluntary dismissal, arguing that the dismissal of the Federal Action should instead be *with prejudice* pursuant to Federal Rule of Civil Procedure 41(a)(1)(B). (Dkt. No. 52.) This Court subsequently ordered full briefing on the issues raised in Federal Defendants' objection. (Dkt. Nos. 53, 55.)

On October 2, 2018, the day after briefing was complete, State Plaintiffs filed the instant motion along with a motion for an order shortening time to have the motion to intervene heard.

## II. LEGAL STANDARD

To be entitled to intervention as of right, "(1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (internal quotation marks omitted). Courts considering Rule 24(a) motions are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Under the permissive intervention rule, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

3

When ruling on a motion to intervene, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). "District courts may often be able to determine whether a prima facie case [justifying intervention] is made out by reference to the proposed intervenor's papers alone; however, [courts are not] foreclose[d] [from] consider[ing] . . . the pleadings and affidavits of opponents to intervention . . . ." *Id*.

## III. DISCUSSION

State Plaintiffs contend that they should be permitted to intervene in the Federal Action by right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative, permissively pursuant to Rule 24(b). Because the Court finds that intervention by right is appropriate, the Court only discusses its reasoning under Rule 24(a).

### A. Timeliness

The determination as to whether a motion to intervene is timely is left to the court's discretion. *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981); *see also Alisal Water Corp.*, 370 F.3d at 921. Courts weigh three factors in determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (internal quotation marks omitted).

Here, the Federal Action never advanced beyond the pleading stage, State Plaintiffs filed their motion "immediately" upon learning about Federal Defendants' objection to Federal Plaintiffs' dismissal without prejudice, and any delay (although it appears none exists) was reasonable under the circumstances and did not substantially prejudice the parties. (State Plaintiffs' Reply ISO MST & MTI ("Reply") at 11, Dkt. No. 62; *see also* Declaration of Mark C. Molumphy ISO MST ¶¶ 2–3.) That State Plaintiffs may have generally understood the preclusive effect in the State Action of a dismissal in the Federal Action does not mean that they contemplated that result absent a *substantive ruling on the merits* of Federal Plaintiffs' claims.

4

(*See, e.g.*, Exh. 3 to Declaration of Maria Jhai ISO Opposition to State Plaintiffs' MTI at 8, Dkt. No. 60-4 ("[If] *the federal court find[s]* that demand was not excused, it inevitably will produce an *earlier preclusive judgment*.") (first emphasis supplied); *id.* at 10 ("[W]hen the demand futility issue is finally *decided* in federal court, the outcome will be binding immediately in [the state court] . . . .") (emphasis supplied).) Indeed, the defendants in the State Action, who are represented by the same counsel as Federal Defendants, had agreed to an extended schedule regarding State Plaintiffs' amended complaint and any corresponding demurrers.

In light of the foregoing, the Court concludes that State Plaintiffs' motion is timely under the circumstances.

### B. Protectable Interest

"Rule 24(a)(2) does not require a specific legal or equitable interest," and it is "generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (internal quotation marks omitted). The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410. The "interest" test is not a clear-cut or bright-line rule, because "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). Instead, the "interest" test directs courts to make a "practical, threshold inquiry," and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 976, 979 (internal quotation marks omitted); *see also Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

State Plaintiffs contend that they have a protectable interest in "ensuring that the derivative claims are not dismissed with prejudice in this action, which could bar the claims from being asserted [in state court] under principles of res judicata and collateral estoppel that Defendants contend are applicable here." (Reply at 8.) Federal Defendants counter that "derivative plaintiffs have no interest in their claims because they purport to represent the corporation, which is the real party in interest." (Opposition to State Plaintiffs' MTI ("Opp.") at 2, Dkt. No. 60). Federal Defendants do not persuade. That a derivative plaintiff's claim belongs to the corporation, as

5

indicated by the cases cited by Federal Defendants (*see* Opp. at 2–3), does not mean that the derivative plaintiff has no interest in the same. Indeed, as owners of the corporation, shareholders have an interest in recovering damages suffered by the corporation. *Cf. Rothenberg v. Sec. Mgmt. Co., Inc.*, 667 F.2d 958, 960 n.3 (11th Cir. 1982) (noting that even though "[a] shareholder receives no direct benefit from a derivative suit . . . [,]a shareholder will benefit indirectly from the increase in stock value that results from the recovery"); *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 (7th Cir. 1979) ("The underlying rationale of [derivative actions] is that because a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim."). The Court is thus persuaded by State Plaintiffs' argument that "Intel ***and*** its shareholders have an interest in ensuring that the derivative claims are fully investigated and litigated on their merits to obtain the best possible recovery for Intel." (Reply at 9 (emphasis in original).)

Accordingly, State Plaintiffs have a legally protectable interest to support intervention.

### C. Impairment of Interest

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee notes) (alteration omitted). There is no requirement that the party seeking to intervene show "an absolute certainty" that its interests will be impaired in support of its request. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).

State Plaintiffs contend that "[i]ntervention is necessary to ensure that the dismissal of the derivative suit is in the best interests of the corporation and the absent stockholders and to protect against prejudice to the corporation from discontinuance of a derivative suit . . . ." (Reply at 9 (internal quotation marks omitted)). They note that "State Plaintiffs assert broader claims and remedies than the claims asserted in the Federal Action" and maintain that "with the benefit of an inspection demand, [they] will be better able to defeat pleading challenges directed at demand futility." (MTI at 9.) Against this backdrop, State Plaintiffs argue that if the Federal Action is dismissed with prejudice, Intel and its shareholders will be substantially affected as the derivative

6

claims may be "preclude[d], bar[red] or forever extinguish[ed]." (Reply at 9.)

The Court is persuaded that that the disposition of the Federal Action with prejudice may impair or impede State Plaintiffs' ability to protect their and Intel's interests and finds that this requirement for intervention is satisfied.

### D. Inadequate Representation

In evaluating the adequacy of representation, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balances Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises[,]" which can be rebutted by "a 'compelling showing' of inadequacy of representation." *Id*. (quoting *Arakaki*, 324 F.3d at 1086).

State Plaintiffs contend that Federal Plaintiffs did not assert the same scope of claims that were asserted in the State Action and that their dismissal of the case demonstrates that Federal Plaintiffs are not willing to assert the same claims. In addition, State Plaintiffs argue that intervention will allow the Court to consider arguments that Federal Plaintiffs may "choose not to pursue or neglect as to impact of dismissal." (MTI at 8.) Federal Defendants respond that while Federal Plaintiffs' complaint lacks an express insider trading cause of action, it is nevertheless "replete with insider-trading allegations." (Opp. at 4.) However, any facts in the complaint that may constitute insider trading are included as part of a breach of fiduciary duty cause of action, which is distinct from an insider trading cause of action. (*See generally* Fed. Deriv. Compl.) Federal Defendants additionally argue that State Plaintiffs' "critici[sm]" of Federal Plaintiffs' "tactical decisions" does not render Federal Plaintiffs inadequate. (Opp at 4.) While the Court agrees as a general matter that disagreement as to litigation strategy would not be a sufficient basis to find Federal Plaintiffs inadequate, it disagrees that State Plaintiffs seek intervention because

7

they "believe they can litigate better on Intel's behalf" or "disagree with decisions by plaintiffs who filed in federal court." (Opp. at 3, 1.) Rather, State Plaintiffs seek to protect the interests of Intel and its shareholders in ensuring that the derivative claims are fully investigated and litigated on their merits to obtain the best possible recovery for Intel. (*See supra* at 5.) This represents more than mere difference in litigation strategy, namely the fundamentally different points of view between State Plaintiffs and Federal Plaintiffs on the litigation as a whole.[5]

Accordingly, the Court finds that the fourth element for intervention as of right is satisfied.

**IV. CONCLUSION**

Based on the foregoing, the Court finds that State Plaintiffs have met the requirements for intervention as a matter of right and **GRANTS** the motion to intervene for the "*sole purpose* of filing a limited opposition to [Federal Defendants'] request for dismissal with prejudice of this Federal Action[.]" (MTI at 2 (emphasis supplied).) This grant does *not* extend to any attempt to seek affirmative relief, such as a stay of the Federal Action. State Plaintiffs must file their opposition no later than **Friday, November 16, 2018**. Federal Defendants' response thereto shall be due no later than **Friday, November 30, 2018**. Each brief shall not exceed **twelve (12) pages**. Once briefing is complete, to the extent necessary, the Court may set a hearing at which the parties in the Federal Action and State Plaintiffs would be heard on their respective positions regarding the dismissal of the Federal Action.

This Order terminates Docket Numbers 57 and 58.

**IT IS SO ORDERED.**

Dated: November 2, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] Federal Defendants' cited cases are distinguishable in this regard as none involves a voluntary dismissal that threatened the derivative claims from being pursued. (*See* Opp. at 4–5.)

As for Federal Defendants' argument that "[t]he writ action is only a means of forestalling final dismissal of the [S]tate [A]ction," (Opp. at 5), it is speculative and the Court does not consider it.

8